SANBORN and others *vs.* ADAIR and others.

1. Where two purchasers of different parcels of the same tract of land, joined in a bill in equity for relief against a judgment creditor seeking to subject their land to the payment of the judgment, the objection of misjoinder and multifariousness, which was not made until the final hearing, was not entertained.

2. A person who, without notice except from the record, purchases land of one who holds it, in fact, by a defeasible title, but whose title, according to the record, is indefeasible, is, as between him and a subsequent purchaser of another part of the property, entitled to the equity which charges lands consisting of different parcels, subject to a general encumbrance, with the payment of the encumbrance, in the inverse order of the alienation of the several parts.

Bill for relief.  On final hearing on pleadings and proofs.

*Mr. A. A. Clark,* for complainants.

*Mr. H. M. Gaston,* for defendant Rarick.

THE CHANCELLOR..

The question presented by the pleadings, is whether the land of the complainants is not entitled to exemption from sale under the judgment of the defendant Adair, until after recourse shall have been had for the satisfaction of that judgment, to the land of Rarick.  The judgment was recovered by Adair on the 18th of September, 1868, against Jacob L. Sutphen and James Kinsey, and it then became a lien on the land in question in this suit, then owned by Sutphen, but now owned by the two complainants and Rarick in three several parcels, one owned by each of them.  On the 20th of February, 1869, Sutphen conveyed to Samuel S. Hartwell, in fee, the portions of the property now owned by the complainants.  On the 31st of March, in that year, he conveyed to Culver Barcalow, in fee, the part now owned by Rarick, and Barcalow conveyed it to Rarick in 1871.  On the 13th of August, 1869, Hartwell conveyed to the complainant Stryker, in fee, by deed with general warranty, that portion of the property conveyed to Hartwell by Sutphen, which is now owned by Stryker, and on the 21st of June, 1870, he conveyed the rest of that property, in fee, by like deed, to the complainant Sanborn.  The complainants, now that Adair is proceeding to sell their property under the judgment, invoke the aid of equity in the premises, claiming exemption for their property until after recourse shall have been had to that of Rarick.  This claim is based on the ground that that property is, in equity, primarily liable, seeing that it was bought by Barcalow after the conveyance to Hartwell was made.  On the other hand, Rarick insists that he is himself entitled to the exemption as against their property, on the ground that the conveyance to Hartwell was, originally,

entirely in trust for Sutphen, and after the 1st of March, 1869, partially so, Hartwell; from that date, holding it in trust for his own indemnity against liability, in respect of his endorsement, for Sutphen's accommodation, of a note for $3500, made by the latter, and at the date of the conveyance to Hartwell, not yet due, and still unpaid, and outstanding, and subject to that claim and right of indemnity, holding the property in trust for Sutphen. The objection made at the hearing, on the ground of misjoinder of the complainants, cannot avail the defendants for the reasons given on that head in *Annin* v. *Annin*, 9 *C. E. Green* 184, in which the same question was presented, under like circumstances.

That the complainants are entitled to the benefit of the rule that lands consisting of different parcels, subject to a general encumbrance, are, in equity, to be charged in the inverse order of the alienation of the several parcels, is clear, unless the fact that the deed to Hartwell was a conveyance in trust for Sutphen, deprives them of it. When the deed to Barcalow was made, the conveyance to Hartwell had become, and then was, in fact, merely a mortgage. It was, on its face, an indefeasible deed in fee, and though a defeasance was then in existence, it had not been, and never was, recorded, nor does its existence appear to have been known to any one except the parties to the deed. Sutphen and Hartwell both stated that the latter had purchased the property, and Hartwell professed to be the absolute owner of it, and Sutphen held him out to be so. It is not alleged that at the time of its purchase, Barcalow had not knowledge of the conveyance to Hartwell. Neither Stryker nor Sanborn knew that the conveyance to Hartwell was not, in fact, absolute, and for his own benefit alone. They are both *bona fide* purchasers for valuable consideration, without notice, and they are entitled to be protected accordingly. It is true, it is insisted that Sanborn had notice, when he purchased, that Hartwell was merely a trustee for Sutphen, but the proof does not satisfy me that such was the fact. He swears that he did not know that Hartwell was not the absolute owner of the property. He,

indeed, appears to have gone to Sutphen, in Newark or New York, to inquire after the property, though he was present at the sale held by the latter, at which it was struck off and declared to have been sold to Hartwell, but he states that it did not, at the time, occur to him that the property had been sold. If it had occurred to him, he would, undoubtedly, have called on Hartwell, who resided in Somerville, as he himself did. He had no purpose or design whatever, except to buy the property of the true owner. He found that Sutphen had negotiated a sale of the land to Plummer, and he then went to the latter and bought it from him, and, as he had reason to do, regarded him as the equitable owner, by purchase from Hartwell, through Sutphen, whom Sanborn supposed to be Hartwell's agent. Plummer, in his order on Hartwell for the deed, speaks of the property as his own, and so he does in the contract for sale between him and Sanborn. Sutphen's testimony on this subject is too vague to be of any considerable importance. He testifies to nothing on this score, positively. At best, he gives his "impression," merely, and that derived from a recollection which seems to be too faint to entitle his impressions to weight in this controversy. He appears never to have told Sanborn that Hartwell held the property in trust for him, but says he thinks that the former saw the letter written by him in reply to a letter (not produced) brought by Sanborn from Hartwell, asking, it is said, for authority from Sutphen to make the conveyance, but he gives his impression merely. And though he says he sent the declaration of trust by the hands of Sanborn to Hartwell, yet it was with the letter to the latter, above mentioned, enclosed in a sealed envelope. As before stated, the evidence does not satisfy me that Sanborn had notice that the title to the land was held by Hartwell in trust for Sutphen. On the other hand, my conclusion is that he believed that the land was the property of Hartwell. That Rarick has no equity against the complainants, or either of them, to have their land sold before his, to pay the judgment, is quite clear. And it is equally clear that Barcalow lost whatever equity he

had at the time of the conveyance to him, by his supineness, for, though he might, before the purchase by the complainants, have taken action to relieve his property, by compelling payment of the judgment out of that which had been conveyed to Hartwell, he did not do so. He has paid to the judgment creditor the amount of the judgment, and has taken an assignment of it. Under the circumstances, he ought not to be permitted to sell the complainants' property to pay the judgment. The property sold by him to Rarick is abundantly sufficient to pay it, with all prior encumbrances, and it was conveyed to Rarick by Barcalow, by deed with warranty general. The complainants are entitled to the relief they seek, and there will be a decree accordingly.